**Appeal No. 22-12421**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

Henry Losch,

*Plaintiff–Appellant*,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant–Appellee.*

_____

On Appeal From The United States District Court
For The Middle District of Florida
Docket No: 2:18-cv-00809-MRM

## DEFENDANT–APPELLEE EXPERIAN INFORMATION
## SOLUTIONS, INC.'S OPENING BRIEF

Adam W. Wiers
(Il. Bar No. 6288709)
Christopher A. Hall
(Il. Bar No. 6316715

JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, IL 60601
Telephone:(312) 269-3939
Facsimile: (212) 755-7306

Callie M. Barr
(MI. Bar No. P83797)
JONES DAY
150 West Jefferson, Suite 2100
Detroit, MI 48226
Telephone: (313) 230-7952
Facsimile: (313) 230-7992

*Attorneys for Defendant–Appellee Experian Information Solutions, Inc.*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Experian Information Solutions, Inc. ("Experian") does

not believe oral argument is necessary to decide the issues presented in this appeal.

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES ................................................................. 1

INTRODUCTION ..................................................................................... 1

STATEMENT OF THE CASE .................................................................. 3

    I.     THE FAIR CREDIT REPORTING ACT ......................................... 3

    II.    LOSCH'S BANKRUPTCY AND DISPUTE ................................... 4

    III.   LOSCH'S PRIOR APPEAL ........................................................... 7

SUMMARY OF ARGUMENT .................................................................. 8

STANDARD OF REVIEW ...................................................................... 10

ARGUMENT AND CITATION OF AUTHORITY ................................. 12

    I.     THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ITS EVIDENTIARY RULINGS ........................................... 12

         A.    The Trial Court Did Not Abuse Its Discretion In Admitting Documents From Losch's Bankruptcy ..................... 12

         B.    The Trial Court Did Not Abuse Its Discretion In Admitting Losch's Second Amended Complaint ......................... 15

         C.    The Trial Court's Application of Judicial Notice Was Correct. ................ 19

         D.    The Trial Court Did Not Abuse Its Discretion By Excluding Reference To Other Consumer Reporting Agencies' Reports ................... 24

         E.    The Trial Court Did Not Abuse Its Discretion By Excluding Evidence Regarding Experian's Corporate Size and Resources. ............... 29

    II.    THE TRIAL COURT DID NOT ERR OR ABUSE ITS DISCRETION IN ITS JURY INSTRUCTIONS ................................. 32

         A.    The Trial Court's Jury Instruction On Burden Of Proof Was Correct. ....... 32

         B.    The Trial Court Did Not Abuse Its Discretion By Excluding Remedial Instructions Regarding Losch's Counsel's Role In Losch's Bankruptcy. ................ 37

         C.    The Courts Instruction Regarding Losch's Duty To Mitigate Was Correct Or Harmless. ................ 41

CONCLUSION ........................................................................................ 43

# TABLE OF AUTHORITIES

Page

CASES

*Alvarez v. Royal Atl. Devs., Inc.*,
610 F.3d 1253 (11th Cir. 2010) ................................................................. 26

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
501 U. S. 104 (1991) ................................................................................. 43

*Benjamin v. Experian Info. Sols., Inc.*,
No. 1:20-CV-2466-RWS, 2022 WL 1697876 (N. D. Ga. Mar. 25, 2022) ............ 28, 29

*Benjamin v. Experian Info. Sols.*,
No. 1:20-cv-02466-CC-RDC, 2021 U.S. Dist. LEXIS 179980 (N.D. Ga.
Aug. 4, 2021) ............................................................................................ 29

*Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*,
713 F.2d 618 (11th Cir. 1983) ................................................................... 16

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,
765 F.3d 1277 (11th Cir. 2014) ................................................................. 11

*Brink v. Direct Gen. Ins. Co.*,
38 F. 4th 917 (11th Cir. 2022) .................................................................. 11

*Brough v. Imperial Sterling Ltd.*,
297 F.3d 1172 (11th Cir. 2002) ................................................................. 29

*Cahlin v. General Motors Acceptance Corp.*,
936 F.2d 1151 (11th Cir. 1991) ............................................................. 32, 33

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................. 32

*Cline v. Sw. Wheel & Mfg. Co.*,
390 S.W.2d 297 (Tex. Civ. App. 1965) ...................................................... 17

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Commodores Ent. Corp. v. McClary*,
    822 F. App'x 904 (11th Cir. 2020) ............................................................. 38

*Cooper v. Meridian Yachts, Ltd.*,
    575 F.3d 1151 (11th Cir. 2009) ................................................................. 17

*Cox Enterprises, Inc. v. News-J. Corp.*,
    794 F.3d 1259 (11th Cir. 2015) ................................................................. 35

*Crawford v. ITW Food Equip. Grp., LLC*,
    977 F.3d 1331 (11th Cir. 2020) ................................................................. 14

*Dalton v. Cap. Associated Indus., Inc.*,
    257 F.3d 409 (4th Cir. 2001) ..................................................................... 34

*Dos Santos v. United States Att'y Gen.*,
    982 F.3d 1315 (11th Cir. 2020) ................................................................. 15

*Doss v. Apache Powder Co.*,
    430 F.2d 1317 (5th Cir. 1970) ................................................................... 17

*Edison v. Dept. of the Army*,
    672 F.2d 840 (11th Cir. 1982) ................................................................... 35

*Farley v. Nationwide Mut. Ins. Co.*,
    197 F.3d 1322 (11th Cir. 1999) ................................................................. 41

*Feshbach v. Dep't of Treasury, Internal Revenue Serv.*,
    594 B.R. 495 (M.D. Fla. 2018), *aff'd sub nom. In re Feshbach*, 974 F.3d
    1320 (11th Cir. 2020) ................................................................................ 23

*Frank v. RentGrow, Inc.*,
    No. 1:21-CV-02108-AT-LTW, 2021 WL 8998917 (N.D. Ga. Dec. 9,
    2021) .......................................................................................................... 33

*Frosty Land Foods Int'l, Inc. v. Refrigerated Transp. Co.*,
    613 F.2d 1344 (5th Cir. 1980) ................................................................... 42

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Gadomski v. Equifax Info. Servs., LLC*,
No. 2:17-CV-00670, 2020 WL 3841041 (E.D. Cal. July 8, 2020) .............................. 29

*Gannon v. IC Sys., Inc.*,
No. 09-60302-CIV, 2009 WL 3199190 (S.D. Fla. Sept. 25, 2009) ............................ 26

*Gardner v. Collector of Customs*,
73 U.S. 499 (1867) ................................................................................................. 23

*Gen. Elec. Co. v. Joiner*,
522 U. S. 136 (1997) ............................................................................................... 11

*Gibson v. Experian Information Sols., Inc.*,
No. 20-CV-00393 (E.D. Mo. October 13, 2020) ...................................................... 29

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) .................................................................................... 4

*Guevara v. NCL (Bahamas) Ltd.*,
920 F.3d 710 (11th Cir. 2019) ................................................................................. 29

*Haygood v. Auto-Owners Ins. Co.*,
995 F.2d 1512 (11th Cir. 1993) ............................................................................... 31

*Lage v. Ocwen Loan Servicing LLC*,
145 F. Supp. 3d 1172 (S.D. Fla. 2015), *aff'd*, 839 F.3d 1003 (11th Cir.
2016) ...................................................................................................................... 15

*Law v. Siegel*,
571 U.S. 415 (2014) ............................................................................................... 23

*Losch v. Nationstar Mortg. LLC*,
995 F.3d 937 (11th Cir. 2021) ........................................................................ passim

*Magwood v. Sec'y, Fla. Dep't of Corr.*,
No. 3:08-CV-747-J-34JRK, 2020 WL 211059 (M.D. Fla. Jan. 14, 2020) ................. 16

Page(s)

*Matter of Raiford*,
695 F.2d 521 (11th Cir. 1983) ................................................................. 15

*MidAmerica C2L Inc. v. Siemens Energy Inc.*,
25 F. 4th 1312 (11th Cir. 2022) ............................................................... 11

*ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*,
881 F.3d 1293 (11th Cir. 2018) ............................................................... 12

*Montgomery v. Noga*,
168 F.3d 1282 (11th Cir. 1999) ............................................................... 42

*Paez v. Sec'y, Fla. Dep't of Corr.*,
947 F.3d 649 (11th Cir. 2020) ................................................................. 21

*Philbin v. Trans Union Corp.*,
101 F.3d 957 (3d Cir. 1996) .................................................................... 33

*Rowe v. U.S. Bancorp*,
569 F. App'x 701 (11th Cir. 2014) ........................................................... 16

*Rubinstein v. Yehuda*,
38 F. 4th 982 (11th Cir. 2022) ................................................................. 43

*Safeco Ins. Co. of Am. v. Burr*,
551 U. S. 47 (2007) ................................................................................... 3

*Samantar v. Yousuf*,
560 U. S. 305 (2010) ................................................................................ 43

*Sepulvado v. CSC Credit Servs., Inc.*,
158 F.3d 890 (5th Cir. 1998) .................................................................... 34

*Stewart v. Credit Bureau, Inc.*,
734 F.2d 47 (D.C. Cir. 1984) ................................................................... 36

*Stollings v. Ryobi Techs., Inc.*,
725 F.3d 753 (7th Cir. 2013) .................................................................... 40

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*United States v. Anderson*,
782 F.2d 908 (11th Cir. 1986) .................................................................... 23

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017) .................................................................. 36

*United States v. Hernandez*,
145 F.3d 1433 (11th Cir. 1998) .................................................................. 40

*United States v. Rey*,
811 F.2d 1453 (11th Cir. 1987) .................................................................. 21

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) .................................................................................... 36

*Vincent v. Louis Marx & Co.*,
874 F.2d 36 (1st Cir. 1989) ........................................................................ 16

*Wolf v. Celebrity Cruises, Inc.*,
683 F. App'x 786 (11th Cir. 2017) ............................................................. 28

*Wood v. President & Trs. of Spring Hill Coll.*,
978 F.2d 1214 (11th Cir. 1992) .................................................................. 37

*Wright v. Experian Info. Sols., Inc.*,
805 F.3d 1232 (10th Cir. 2015) .................................................................. 34

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
846 F.3d 1159 (11th Cir. 2017) .................................................................. 11

## STATUTES

11 U.S.C. § 524(c) ............................................................................... passim

11 U.S.C. § 105(a) .................................................................................. 23, 24

15 U.S.C. § 1681e(b) ........................................................................... passim

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

15 U.S.C. § 1681i(a) ...................................................................................... 3, 4

15 U.S.C. § 1681o .......................................................................................... 8

15 U.S.C. § 1681s-2(b) ................................................................................. 4

16 U.S.C. § 1692k(c) ..................................................................................... 36

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(c) ...................................................................................... 25

Fed. R. Civ. P. 60 .......................................................................................... 5

Fed. R. Evid. 201 .......................................................................................... 19, 20

Fed. R. Evid. 602 .......................................................................................... 27

Fed. R. Evid. 801 .......................................................................................... 17, 27

Fed. R. Evid. 802 .......................................................................................... 25

Fed. R. Evid. 803 .......................................................................................... 26

Restatement (Second) of Torts § 918 (1979) ................................................ 43

## STATEMENT OF THE ISSUES

1. Whether the District Court Abused Its Discretion In Any Evidentiary Rulings During Trial; and

2. Whether the District Court Made Any Clearly Erroneous Legal Rulings During Trial That Require Remand.

## INTRODUCTION

In April 2021, this Court affirmed summary judgment for Experian on much of Appellant Henry Losch's ("Losch") claims, but remanded on the narrow question of whether Experian's reinvestigation of Losch's single dispute was reasonable, and if not, whether Experian had caused Losch any actual damages. At the conclusion of a five-day trial, a jury unanimously concluded that the answer was "No." Now, Losch asks this Court to set aside the jury verdict based on incorrect views of the law, distortions of the trial record, and empty refrains of unfair prejudice. At every turn, Losch's "kitchen sink" appeal fails.

*First*, on the evidentiary side, Losch makes misguided complaints about the admission of his bankruptcy documents and the Second Amended Complaint ("SAC"), and then the exclusion of non-party credit bureau reporting and punitive damages. Regarding the admission of his bankruptcy documents and his SAC (the operative pleading), Losch ignores the fact that these are the very documents that serve as the foundation for his case. Absent his bankruptcy documents, Losch has

no claim of inaccurate reporting, and without those documents, he could not argue that Experian should have looked at them when responding to his dispute. Nor can Losch fairly claim that Experian was responsible for his alleged damages without allowing Experian to demonstrate that other factors contributed to the situation. The bold move of distancing himself from his operative pleading ignores the black letter law regarding judicial admissions. Like any other civil litigant, Losch's allegations in his SAC are binding admissions on him and were directly relevant to his claims.

Losch also wrongly argues that it was improper for the Court to exclude unfounded hearsay testimony about what some other non-party credit bureau was reporting, notwithstanding the fact that Losch produced no documents or witnesses for authentication on these documents. Finally, the trial court further properly prevented Losch's counsel from trying to adduce evidence aimed at punitive damages as that evidence was made irrelevant by this Court's prior ruling. Losch does not identify any actual error in the trial court's evidentiary rulings, let alone one amounting to an abuse of discretion.

*Second,* Losch's complaints aimed at jury instructions regarding the burden of proof, disparagement of counsel, and duty to mitigate also fail. Regarding his burden of proof under 15 U.S.C. § 1681e(b), Losch argues the trial court misstated the law, pretending as though this Court had not previously articulated *exactly* what Plaintiff had to show at trial. Next, Losch's claim that the trial court should have

issued a limiting instruction regarding the fact that his law firm, Price Law Group, represented him in both his bankruptcy and at trial is aimed at arguments Experian never made. Experian never said anything untrue or disparaging about Price Law Group. Rather, Experian's use of the fact that Losch's own lawyers made mistakes illustrated the confusing nature of Losch's own bankruptcy, a factor relevant to the questions before the jury. Finally, Losch's complaints about the instruction on his duty to mitigate forgets that the jury did not even reach this issue and that the trial court properly articulated the law.

This case has endured long enough. A jury heard the evidence and reached a fair verdict. None of the issues in Losch's appeal warrant disturbing that verdict.

## STATEMENT OF THE CASE

### I.     THE FAIR CREDIT REPORTING ACT

Congress enacted the Fair Credit Reporting Act ("FCRA") "to ensure fair and accurate credit reporting . . . ." *Safeco Ins. Co. of Am. v. Burr*, 551 U. S. 47, 52 (2007). The FCRA requires consumer reporting agencies ("CRAs") to have "reasonable procedures to assure maximum possible accuracy" of information reported to third parties in "consumer reports," *see* 15 U.S.C. § 1681e(b), as well as to "conduct a reasonable reinvestigation" of consumer disputes. 15 U.S.C. § 1681i(a)(1)(A).

As a CRA, Experian does not originate information, but rather collects information from data furnishers like banks or other consumer financial institutions and compiles that information into consumer reports. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) ("With respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer"). When a CRA like Experian receives a consumer dispute, the CRA is required to notify the data furnisher of that dispute so that the furnisher can conduct its own investigation and report those findings back to the CRA. *See* 15 U.S.C. § 1681i(a)(2); § 1681s-2(b).

## II.    LOSCH'S BANKRUPTCY AND DISPUTE

Losch filed a Chapter 7 bankruptcy on March 24, 2017, scheduling a mortgage with CitiMortgage, Inc., secured by property in Apopka, Florida. Doc. 250-1 at 21.[1] On May 5, 2017, Appellant executed a reaffirmation agreement with CitiMortgage. Doc. 250-2. Once a consumer has reaffirmed a debt, they may rescind the reaffirmation agreement "at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later . . . ." 11 U.S.C. § 524(c)(4). A discharge order was entered in Appellant's bankruptcy case on June 26, 2017. Doc. 250-5. The discharge order explained that "[d]ebts for which the debtor

_____

[1] "Doc." Refers to the electronic document number. Page numbers to documents such as exhibits are indicated by an "at" while page and line citations to transcripts are separated by a colon (page:line). *See* 11th Cir. R. 28-5.

has given up the discharge protections by signing a reaffirmation agreement" are not discharged. *Id*. at 2. In July 2017, the mortgage was transferred to Nationstar Mortgage Services, LLC ("Nationstar"). Doc. 250-12.

In November 2017, Losch's attorneys at Price Law Group filed a motion to set aside his discharge in order to rescind his reaffirmation with CitiMortgage. Doc. 250-6. That Motion invoked Federal Rule of Civil Procedure 60, and sought to set aside the discharge order due to "mistake, inadvertence, surprise, or excusable neglect." *Id*. at 5, ¶ 25. Losch's attorneys conceded that they "failed to notify [Losch] of the need to file a recission of the Reaffirmation" explaining "[i]t did not occur to the attorney until after the discharge was entered that a recission was not filed." *Id*. at 6, ¶ 27. An Amended Motion was filed in February 2018, and was granted in April 2018, eleven months after the reaffirmation agreement was executed, and nearly ten months after the discharge order was entered. Doc. 250-7. The order granting the Amended Motion did not state whether the Nationstar debt was discharged. *Id.*

In May 2018, Losch obtained a copy of his Experian credit report that showed Nationstar was reporting a balance of $139,853, an amount past-due of $10,006, and data showing that Losch was more than 180 days past-due. Doc. 251-1. On June 19, 2018, Experian received a one-paragraph letter from Losch disputing this reporting. Doc. 264 at 32:6-8. The letter stated that the Nationstar account was discharged in

Losch's Chapter 7 bankruptcy, that Losch had rescinded his reaffirmation agreement, and that he "no longer own[ed] this debt." Doc. 251-2.

On June 26, 2018, Experian began its reinvestigation. Doc. 264 at 79:8-12; Doc. 251-6. Because Losch claimed both that the debt was discharged and that he no longer owned the Nationstar account, Experian determined that it needed to contact Nationstar to reinvestigate the dispute. Doc. 262 at 248:2-18. Experian sent an Automated Consumer Dispute Verification ("ACDV") to Nationstar, attaching Losch's dispute letter, and requested Nationstar to verify or update the disputed information. Doc. 262 at 248:14-249:24; Doc. 264 at 77:17-79:17; Doc. 251-6. Nationstar responded to the ACDV on July 11, 2018, verifying the balance amount of $139,853, increasing the amount past due, and adding two additional months of missed payments. Doc. 251-6; Doc. 264 at 180:17-23; *Id*. at 187:10-16. Nationstar did not instruct Experian to report the Nationstar Account as discharged. Doc. 264 at 188:10-17. On July 12, 2018, Experian sent Losch dispute results that showed the updated reporting, and informed him of his right to add a statement of dispute if he wished. Doc. 251-8. Losch did not contact Experian to add a dispute statement, choosing to file this lawsuit instead. Doc. 264 at 28:14-18.

Consistent with its response to Experian's ACDV, Nationstar continued to send Losch statements indicating he was past due on the mortgage. Doc. 263 at 127:9-128:2. When Nationstar eventually filed to foreclose on the property in

Florida state court, it named Losch individually in the case. Doc. 250-9. Nationstar was originally a defendant in this case, but settled with Losch before summary judgment. Doc. 264 at 205:12-14; Doc. 263 at 87:6. At deposition, Nationstar admitted that it made mistakes in handling Losch's dispute and verifying the accuracy of information when Nationstar responded to Experian. Doc. 264 at 202:12-203:25; *Id*. at 204:16-25.

## III.  LOSCH'S PRIOR APPEAL

On February 12, 2020, visiting District Court Judge Paul A. Magnuson granted Experian's Motion for Summary Judgment and Losch subsequently appealed. Doc. 127; Doc. 129. In April 2021, this Court affirmed in part and reversed in part. Doc. 144. This Court first held that Experian's reporting was factually inaccurate stating "Experian agrees that the bankruptcy court discharged Losch's mortgage," but then went on to hold that Experian was entitled to summary judgment on Losch's claims that Experian willfully violated the FCRA and on any claims arising before Experian received Losch's dispute letter. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021) ("*Losch I*"). In remanding, this Court explained:

> To be clear, our holding is a narrow one. Just as we cannot hold that Experian's procedures were *per se reasonable*, we do not hold that they were *per se unreasonable*. Nor do we hold that in every circumstance where a plaintiff informs a credit-reporting agency of an inaccuracy, the agency *must* examine court records to independently discern the status of a debt. Even when a consumer has informed the agency about inaccurate information, there may be circumstances—say, when the consumer supplies insufficient detail—in which there is no jury

question about the reasonableness of the agency's investigation or reinvestigation. Or the facts may show that the agency took alternative steps to verify information, such as contacting the consumer. Again, on the facts of this case—where (1) Losch provided a sufficiently detailed notice to Experian for it to investigate the inaccuracy and (2) Experian did nothing other than forward the letter to its data furnisher—we cannot say that Experian's procedures were reasonable as a matter of law, such that it was entitled to summary judgment.

*Id*. at 947.

On remand, the question for the jury was whether Experian's reinvestigation was reasonable and, if not, whether Experian caused Losch any actual damages. *See* 15 U.S.C. § 1681o. A five day trial was held at the end of June 2022, with the jury reaching a verdict for Experian on all counts. *See* Doc. 248.

## SUMMARY OF ARGUMENT

Losch's appeal is meritless. He does not identify any erroneous rulings by the trial court and relies instead on plainly mistaken views of relevance, misdirected case law, and selective recitations of the trial record.

The trial court properly admitted the documents from Losch's bankruptcy. These documents are relevant for at least three reasons. First, they form the factual predicate for Losch's entire case — without Losch's bankruptcy, any claim that Experian's reporting was inaccurate vanishes. Second, they illustrate the underlying rationale for Experian's reinvestigation policies. Experian does not wade into consumers' bankruptcies because that process can often be fraught with ambiguity and there is little question that Losch's own bankruptcy was extraordinary when it

comes to the treatment of his mortgage debt. Third, Losch's bankruptcy documents demonstrate that even his own bankruptcy attorneys made mistakes with respect to Losch's reaffirmation of the Nationstar account, a factor relevant to the jury's consideration as to whether Experian caused any of Losch's damages.

The trial court also properly admitted Losch's SAC. That pleading remains the operative pleading in this case and Losch's factual allegations remain binding judicial admissions. At trial, Losch insisted that Experian was the source of his emotional distress, but his binding admissions told a different story — and focused instead on Nationstar's actions and culpability. Losch's related complaints about judicial notice of the Bankruptcy Code and his SAC are likewise unavailing, as each was an appropriate use of judicial notice.

The trial court also properly prevented Losch's counsel from interjecting statements about non-existent reporting from other credit bureaus. Losch did not produce documents to show what, if anything, other bureaus were reporting regarding the Nationstar account, let alone a witness who could authenticate and explain those documents and the related policies from other credit bureaus. Similarly, the trial court properly excluded evidence about Experian's size and net worth — information that has no bearing on how Experian responded to Losch's dispute and ran significant risk of unfair prejudice to Experian.

Losch's complaints about jury instructions also fail to identify any errors or mistakes warranting remand. The trial court properly stated the law on 15 U.S.C. § 1681e(b) and § 1681i. Losch's reliance on a case discussing burdens in the context of summary judgment simply misses the mark. Losch's claim that the trial court was required to issue a limiting instruction regarding its taking of judicial notice ignores the record and the Court's actual instruction, which plainly told the jury what it meant when the Court took judicial notice.

Losch's argument that Experian somehow disparaged Price Law Group during the trial ignores the record and the arguments Experian actually made at trial. Experian's sole point was that Losch's own bankruptcy was so complicated that experienced bankruptcy attorneys made mistakes in addressing the rescission of his reaffirmation. Such evidence was relevant to both Experian's policies as well as the cause of any damages Losch suffered. Finally, Losch's argument about the instruction on his duty to mitigate is both legally wrong and inconsequential. The jury never reached this question because it had already determined that Losch failed to show any negligence by Experian. Regardless, the trial court properly stated the law of mitigation, which applied to Losch's claims at trial.

## STANDARD OF REVIEW

Several standards govern an appeal after civil trial. Evidentiary rulings, including those made on motions *in limine* are reviewed for an abuse of discretion.

*See MidAmerica C2L Inc. v. Siemens Energy Inc.*, 25 F. 4th 1312, 1325–26 (11th Cir. 2022); *Gen. Elec. Co. v. Joiner*, 522 U. S. 136, 141 (1997). A district court abuses its discretion only when it makes an evidentiary ruling that is clearly erroneous. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017). Appellate review of jury instructions is "simultaneously *de novo* and deferential." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1275 (11th Cir. 2008)). Jury instructions are reviewed *de novo* "to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *Id.* (quoting *Goldsmith*, 513 F.3d at 1275). But district courts are given wide discretion on stylistic matters and wording. *See id.* And, reversal of a jury verdict is only warranted when the reviewing court is "left with a substantial and ineradicable doubt as to whether" the district court properly guided the jury." *Id.* (quoting *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab.*, 739 F.3d 579, 585 (11th Cir. 2013)). A district court's decision not to provide a jury instruction or curative instruction is also reviewed for an abuse of discretion. *Brink v. Direct Gen. Ins. Co.*, 38 F. 4th 917, 922 (11th Cir. 2022).

## ARGUMENT AND CITATION OF AUTHORITY

## I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ITS EVIDENTIARY RULINGS

### A. The Trial Court Did Not Abuse Its Discretion In Admitting Documents From Losch's Bankruptcy.

Losch first takes issue with the fact that the trial court admitted pleadings from Losch's bankruptcy. Losch argues that these documents are irrelevant because Experian did not review them in the course of its reinvestigation. *See* Appellant's Br. at 10–11. This argument relies on an artificially myopic view of relevance and is mistaken.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." This is a generous standard and "[t]he district court has broad discretion to determine the relevance and admissibility of any given piece of evidence." *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.,* 881 F.3d 1293, 1297 (11th Cir. 2018) (quoting *United States v. Clay*, 832 F.3d 1259, 1314 (11th Cir. 2016)).

Losch's bankruptcy documents were relevant at trial for at least three reasons. *First*, they serve as a fundamental predicate to Losch's claims. As this Court noted in *Losch I*, the reason why Experian's reporting was incorrect was by virtue of Losch's bankruptcy discharge. *See Losch I*, 995 F.3d at 945 ("[N]one of that was

true following the bankruptcy-debt discharge—Losch was no longer liable for the balance nor was he 'past due' on any amount for more than 180 days.").

*Second*, and as Experian explained at trial, the central issue at trial was whether Experian's reinvestigation and the policies that drove it were reasonable. Those policies are designed to factor in the risk that a consumer's bankruptcy can be full of vague, uncertain, and confusing entries. *See* Doc. 262 at 8:7–13 ("[T]hat the documents that are actually in plaintiff's bankruptcy documents are directly relevant to the reasonableness of the reinvestigation, what other alternatives there were, they go to causation, they go to contributory negligence and the reasonableness of Experian's reinvestigation, generally. So we think they're squarely relevant. So that's sort of one category of documents."). Losch even acknowledges that this Court's decision in *Losch I* emphasized that one relevant consideration in determining whether Experian's reinvestigation was reasonable is what Experian would have found "by reviewing the bankruptcy docket." *See* Appellant's Br. at 16. Losch argues that the fact that his bankruptcy attorneys had "fixed" their mistake by the time he disputed renders his bankruptcy documents irrelevant, but that is not so. After all, it remains true that there is not a single document in Losch's bankruptcy that says that the Nationstar debt was discharged. Indeed, the only judicial document to say that is this Court's opinion in *Losch I.* Showing the jury what Experian would have found had it reviewed Losch's bankruptcy docket was relevant to the jury's

assessment of the actions Experian did take because it demonstrated the lack of a reasonable alternative. *See Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1340 (11th Cir. 2020) (expert's testimony on alternative designs is admissible in negligence case).

*Third*, these documents also went to issues of damage causation in several ways. Losch has long claimed that Experian should have done something other than send an ACDV to Nationstar to reinvestigate. While Losch has never said exactly *what* he thinks Experian should have done, the only viable alternative would have been for Experian to dive into Losch's bankruptcy docket and pleadings. It was thus relevant to show these documents to the jury to demonstrate that Experian's failure to review them did not cause any damage to Losch. And, as Experian repeatedly explained during the trial, Experian had an affirmative defense of contributory negligence and Losch's bankruptcy documents — chiefly the motion to set aside Losch's discharge — were relevant to the jury's determination as to whether any of Losch's damages were caused by others, or even his own agents.

Nor is there any unfair prejudice in Experian's use of the documents. At Plaintiff's request, the trial court instructed the jury that the Nationstar debt was discharged and Experian's reporting was inaccurate as a result. Losch was free to argue (as he did) that the contents of those documents did not matter, but the jury was free (as it did) to reject that argument. Losch's bankruptcy pleadings are a matter

of public record. He was free to address any and all of them during the trial. The trial court did not err in admitting them, let alone abuse its discretion.

**B.    The Trial Court Did Not Abuse Its Discretion In Admitting Losch's Second Amended Complaint.**

Losch next complains that the trial judge abused his discretion in admitting Losch's own SAC. Losch argues that his own allegations are hearsay and goes so far as to claim: "Federal courts generally hold under these circumstances the pleading should be excluded." Appellant's Br. at 25. This is plainly wrong, and perilously close to an intentional misrepresentation of the law.

Losch's arguments fail to recognize the fundamental distinction between allegations made in pleadings in another case, or in a pleading that has since been withdrawn, and allegations made in the *operative pleading in the case at hand*. "A litigant is generally 'bound by the admissions in his pleadings.'" *Dos Santos v. United States Att'y Gen.,* 982 F.3d 1315, 1319 (11th Cir. 2020) (quoting *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983)); *see also Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1191 (S.D. Fla. 2015), *aff'd*, 839 F.3d 1003 (11th Cir. 2016) ("Factual assertions contained within pleadings are generally 'considered to be judicial admissions conclusively binding on the party who made them.'") (citation omitted); *Matter of Raiford*, 695 F.2d 521, 523 (11th Cir. 1983) ("Normally judicial admissions are binding for the purpose of the case in which the admissions are made, not in separate

and subsequent cases."). This Court has recognized that "judicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Best Canvas Prod. & Supplies*, 713 F.2d at 621 (quoting *Hill v. Fed. Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941)). And, despite Losch's protests, it makes no difference that it was his attorneys who drafted his SAC: "Any other rule 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." *Id.* (quoting *Link v. Wabash R. R. Co.,* 370 U. S. 626, 634 (1962)).

Plaintiff fails to address any of this controlling law and a review of the cases he cites underscores the point. In *Vincent v. Louis Marx & Co.,* 874 F.2d 36 (1st Cir. 1989), the First Circuit addressed admissions made in a pleading in a separate action filed in state court. Even then, the First Circuit did not hold that it was error to admit the pleading, only that the district court's analysis was wrong because the admission was discretionary, not mandatory. *See id.* Indeed, other cases Losch cites undermine his argument as well. For instance, in *Rowe v. U.S. Bancorp*, 569 F. App'x 701, 703 (11th Cir. 2014), the Eleventh Circuit affirmed the trial court's finding that the amount in controversy was over $75,000 for diversity jurisdiction purposes based on allegations made by the Plaintiff in a prior pleading. And *Magwood v. Sec'y, Fla.*

*Dep't of Corr.*, No. 3:08-CV-747-J-34JRK, 2020 WL 211059, at *1 (M.D. Fla. Jan. 14, 2020), deals only with a party's attempt to use *its own pleading* to establish a fact, not an opposing party's use of a judicial admission in a pleading. Losch's reliance on *Cline v. Sw. Wheel & Mfg. Co.*, 390 S.W.2d 297, 299 (Tex. Civ. App. 1965) another case dealing with a party's use of her own pleading, is misplaced jurisdictionally and misstates Texas law on the use of pleadings: "Prohibiting defendant from introducing prior pleadings and cross-examining one of the plaintiffs about them was error. 'Abandoned pleadings are properly admissible as ordinary declarations or admissions against interest,'" *Doss v. Apache Powder Co.*, 430 F.2d 1317, 1323 (5th Cir. 1970) (quoting 24 Tex.Jur.2d, Evidence, § 631 at 208 (1961)).

As this Court has long recognized, "facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) (quoting *Hill*, 124 F.2d at 106. Experian was not only entitled to present Losch's judicial admissions to the jury, Losch was barred from controverting them. The trial court did not err on this basic procedural point.

Losch is also wrong that his judicial admissions are hearsay. An opposing party's statements are non-hearsay under the Federal Rules of Evidence. *See* Fed. R. Evid. 801(d)(2). Indeed, the Rules of Evidence expressly exclude statements, like those in the SAC that are "made by the party's agent or employee on a matter within

the scope of that relationship and while it existed." *Id*. Unsurprisingly, Losch does not cite a single case holding that a party's operative pleading was hearsay or inadmissible at trial when used by the *opposing* party.

Even if Experian's use of the SAC were limited to demonstrating inconsistency, there is ample evidence in the trial record of testimony by Losch and his wife that is inconsistent with his allegations in the SAC. On direct examination, Losch testified that he never thought he had to pay Nationstar anything following his bankruptcy, despite their repeated notices. *See* Doc. 263 at 60:21–23 ("And did you think you had to pay those notes? A. No, they said -- they even said on there that, if it was discharged in the bankruptcy, disregard this notice."). He then blamed Experian for causing him significant distress. *Id.* at 66:17–22 ("Q: And how did you feel when you saw that the information that you disputed had been verified as accurate? A. I felt sick, sick to think that, after everything I'd gone through, that disputing that or calling their attention to the fact that the information that they're reporting was incorrect, that they still had it wrong."). Losch then offered testimony from his wife Jody, who went even further, testifying that Losch was "depressed" and "unapproachable" due to Experian's reporting. *Id.* at 191:8–17. But these allegations are not in the SAC, which instead focuses almost entirely on Nationstar and its efforts to collect. *See* Doc. 250-17 at 6-10 ¶¶ 39–80. Specifically, Losch alleged that Nationstar's conduct was "abusive and harassing" and that "the constant

contact from Nationstar has added to [Losch's] stress and anxiety." *Id.* at 10 ¶¶ 76, 79. In contrast to his trial testimony suggesting he was not troubled by Nationstar's collection efforts due to a footnote in their letters reference bankruptcy discharge, the SAC alleged that Losch was "shocked, confused and upset" by Nationstar's efforts to collect the debt. *Id.* at 9 ¶ 67.

It was fair for Experian to point out to the jury that, when Losch was seeking to recover from both Nationstar and Experian, his allegations centered on Nationstar's efforts to collect the debt, but at trial, having already recovered a settlement from Nationstar, Losch's narrative changed to fit the circumstances.

The Court did not err, let alone abuse its discretion, in admitting the SAC.

**C.     The Trial Court's Application of Judicial Notice Was Correct.**

At several points during trial, Experian asked the Court to take judicial notice pursuant to Fed. R. Evid. 201. Losch complains of two applications; the taking of judicial notice of the fact that the SAC was the operative complaint and provisions of the U. S. Bankruptcy Code. Losch claims that both were errors and that the Court's instruction on judicial notice was also erroneous. None of these arguments have merit.

Federal Rule of Evidence 201(c)(2) governs judicial notice of adjudicative facts and provides that a Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." The Advisory Committee's

comments explains that "[a]djudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201.

Experian's first raised use of judicial notice in preliminary discussion of Experian's exhibits 16, 17 and 21, documents from Losch's bankruptcy and state court foreclosure. On day two of the trial, the trial court discussed the instruction he proposed giving to the jury when a document or fact subject to judicial notice was presented to the jury:

> Again, the instruction on judicial notice, based on the Eleventh Circuit's pattern instruction at instruction 2.5 would be as follows:
>
> The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this judicial notice.
>
> I've accepted the fact that these materials were made part of the bankruptcy court file and state court foreclosure file as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

Losch's counsel then confirmed he was satisfied with this instruction. Doc. 263 at 10:7:-11:8.

Then during cross-examination of Losch, Experian asked the Court to take judicial notice of the SAC. Doc. 263 at 100:3-4. After hearing evidentiary objections, the trial court asked Losch's counsel directly:

THE COURT: Is there as a legitimate basis for opposing judicial notice of a pleading filed by you on behalf of your client in this case?

MS. ROTKIS: No, Judge.

*Id*. at 100:20-23.

After the sidebar concluded, the trial court gave a similar instruction to the one the parties had agreed to:

THE COURT: Members of the jury, the rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this judicial notice. I have accepted the fact that Defendant's Exhibit 100 is the complaint filed by Mr. Losch in this case as proven. Even though no one has introduced evidence to prove it, you must accept it as true for this case. Thank you.

*Id*. at 104:7-13.

Losch does not identify any error with this, nor could he. A district court's decision to take judicial notice is reviewed for an abuse of discretion. *Paez v. Sec'y, Fla. Dep't of Corr.,* 947 F.3d 649, 651 (11th Cir. 2020). It is well-established that "[a] court may take judicial notice of its own records . . . ." *United States v. Rey*, 811 F.2d 1453, 1457 (11th Cir. 1987). It almost certainly *would have been* error for the Court to deny Experian's request for judicial notice of the SAC, and despite his protest now, Losch's counsel was correct at trial that there was no legitimate basis to object to this request.

Losch next complains about the trial court's taking judicial notice of the text of 11 U.S.C. § 524(c)(4), which governs the recission of reaffirmation agreements.

Experian made this request during direct exam, after first eliciting testimony regarding Experian's dispute policies for when a consumer submits a dispute stating they rescinded a reaffirmation agreement. Doc. 264 at 42:2–43:8. That policy details the steps an agent should take and reads:

> "Rescinded" defined
>
> **Rescinded** means a consumer changed his/her mind about reaffirming an account. Now, the consumer wants the account placed back into bankruptcy.
>
> An account may be rescinded at any time prior to the discharge of the bankruptcy or within sixty days after the rescinded agreement is filed with the court, whichever occurs later, by giving notice of rescission to the creditor.

Doc. 251-7 at 31.

At sidebar, Experian explained, again, that the purpose of Experian's request was to explain to the jury that Experian's dispute policies were written with the Bankruptcy Code in mind and mirror the language of 11 U.S.C. § 524(c)(4). Doc. 264 at 44:1–13. Losch complains that the statute was irrelevant because he was ultimately allowed to set aside his discharge and rescind his reaffirmation agreement. Appellant's Br. at 20. Losch claims, without any citation to anywhere in the trial record, that Experian used this to "imply the Nationstar discharge was not effective." Appellant's Br. at 26. The reason why Losch cannot cite the record is because that is not what happened. Rather, consistent with the mandate from *Losch I*, the trial court instructed the jury that the Nationstar account was discharged and Experian's

reporting was inaccurate. Indeed, the jury found that Losch had satisfied this element of his claims. Doc. 248.

It has long been the rule in federal court that "courts should take judicial notice of public statutes . . . ." *Gardner v. Collector of Customs*, 73 U.S. 499, 509 (1867) ("The judicial notice of the court must extend, not only to the existence of the statute, but to the time at which it takes effect, and to its true construction.); *see also United States v. Anderson*, 782 F.2d 908, 917 (11th Cir. 1986) (jury instruction quoting statute was judicial notice).

Likewise, the trial court was careful to avoid issuing any instruction that would suggest to the jury that he was approving Experian's policy, holding a discussion without the jury present to fashion an appropriate instruction that was narrowly tailored. In order to accommodate Losch's counsel, the trial court included both 11 U.S.C. § 524(c), which governs recissions of reaffirmation agreements, as well as 11 U.S.C. § 105(a),[2] which governs the bankruptcy court's use of equitable powers. Doc. 264 at 70:3–71:6.

---

[2] It remains questionable whether a bankruptcy court's equitable powers under 11 U.S.C. § 105(a) extend to allowing a debtor to rescind a reaffirmation after the statutory deadlines of 11 U.S.C. § 524(c)(4). *See Law v. Siegel*, 571 U.S. 415, 421 (2014) ("We have long held that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.") (citations omitted); *Feshbach v. Dep't of Treasury, Internal Revenue Serv.*, 594 B.R. 495, 501–02 (M.D. Fla. 2018), *aff'd sub nom. In re Feshbach*, 974 F.3d 1320 (11th Cir. 2020) ("[W]here the demands of the statute are

This Court was clear in *Losch I* about the scope of remand. The jury was asked whether Experian's reinvestigation of Losch's dispute, and thus the policies that applied to it, were reasonable. Losch does not try to argue that Experian's policies are not relevant, and it was fair for Experian to adduce evidence that would show the jury why Experian's policies say what they say. It was neither error nor an abuse of discretion for the Court to take judicial notice of the language of 11 U.S.C. § 524(c).

### D. The Trial Court Did Not Abuse Its Discretion By Excluding Reference To Other Consumer Reporting Agencies' Reports

The trial court did not abuse its discretion by excluding from trial Losch's reference to other consumer reporting agencies' reports on the grounds that they were hearsay, irrelevant, and prejudicial. Doc. 263 at 18:12–21. Losch broadly argues that his inability to argue that TransUnion and Equifax "correctly" reported Losch's trade line was an abuse of discretion because that information was "vitally necessary" to rebut Experian's argument that even if it had implemented Losch's alternative procedure by looking at Losch's bankruptcy docket, it would not have been able to determine the status of Losch's Nationstar debt. Appellant's Br. at 47. This argument fails on multiple levels.

Initially, as the trial court understood, there was *no evidence* produced in this case, let alone included in Losch's pretrial exhibit list, that shows what other CRAs

---

clear, the bankruptcy court is unable to use its powers under 11 U.S.C. § 105(a) to rule otherwise").

were reporting, or if Trans Union and Equifax were even reporting the Nationstar account at all.[3] *See* Doc. 234 (Losch's Amended Exhibit List). It would have violated both Federal Rule of Evidence 802 as well as Federal Rule of Civil Procedure 37(c) had the trial court allowed Losch to testify about the supposed contents of undisclosed documents. It was not an erroneous decision to exclude this undisclosed hearsay evidence. The trial court properly noted that Experian's "hearsay objection is well founded" because "it sounds" "like there is an intent to allude to the content of those documents [other CRA consumer reports]." Doc. 263 at 18:16–18.

Losch asserts that the evidence of other CRAs reports was not hearsay because he was not offering the reports for the truth of the matter asserted. Appellant's Br. at 48. But that does not make any sense. If Losch intended to testify about the contents of his credit reports from Trans Union or Equifax, it would only be relevant if the reporting as Losch intended to describe it were true. And, it contradicts Losch's "vital need" to bring in the evidence — that the other CRAs reported the trade line correctly. It's only vitally necessary if it is, indeed, true (and if the additional hearsay

---

[3] While many furnishers report the same information to all three national CRAs, that is not always the case. *See, e.g.*, Cons. Fin'l Prot. Bur., "I got my credit score from two different credit bureaus and have two different numbers. Why is that?," CFPB Gov. Sept. 4, 2020 (*available at* https://www.consumerfinance.gov/ask-cfpb/i-got-my-credit-score-from-two-different-credit-bureaus-and-have-two-different-numbers-why-is-that-en-1275/) ("Sometimes, lenders do not furnish information to all three nationwide credit reporting companies.").

testimony about what other CRAs did to create or correct the reporting following Losch's bankruptcy). As Losch writes in his brief: "Each of Experian's contentions is directly rebutted (if not invalidated) by the *fact* that the other national CRAs correctly reported the Nationstar debt[. ]" Appellant's Br. at 50 (emphasis added). It is not a fact if it is not true. And it is not a fact in the record of this case at all.

If Losch wanted to bring in non-hearsay evidence, he needed to attempt to admit the reports themselves, with proper authentication. *See* Fed. R. Evid. 801, 803. And if he wanted to adduce evidence of other CRAs procedures, he needed to properly obtain and produce that evidence in discovery. Losch does not have the required foundation to testify as to Equifax or Trans Union's reports and procedures because he did not create the reports, and he has no firsthand knowledge of the information and procedures that went into preparing the report. *See, e.g.*, *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1268 n.10 (11th Cir. 2010) (finding testimony from plaintiff about which she did not have personal knowledge, without offering affidavits or sworn statements, was inadmissible hearsay); *Gannon v. IC Sys., Inc.*, No. 09-60302-CIV, 2009 WL 3199190, at *2 (S.D. Fla. Sept. 25, 2009) (holding that credit reports are only admissible if accompanied by testimony from someone at the CRA with knowledge of how the reports were compiled).

This makes Losch's second hearsay point moot — he cites *Semper v. JBC Legal Group* for the proposition that credit reports may be admissible as records of

a regularly conducted activity, No. C04-2240L, at \*10 n.11 (W.D. Wash. Sep. 6, 2005), however, Losch was not attempting to admit credit reports — he was trying to admit his own unsupported testimony as to what these supposed reports said. *See* Doc. 263 at 14:21–22 ("[W]e're not introducing the documents."); *Id*. at 16:8–14 (Losch's counsel stating he was not admitting reports themselves). This is too far, and simply not allowed under the Federal Rules of Evidence. *See* Fed. R. Evid. 801.[4]

Even if Losch had presented the reports themselves, the trial court's decision to omit them was correct because evidence regarding what other CRAs reported would be irrelevant and unfairly prejudicial because (1) there is no evidence that Experian and any other CRA were operating under the same set of facts so that they could be adequately compared for purposes of determining relevance; and, (2) Losch has not presented any evidence that other CRAs' procedures amount to an industry standard or custom such that Experian's deviation is probative of reasonableness.

Again, there is no record of what Nationstar reported to the other CRAs; let alone what the other CRA's *procedures* were upon receipt of that information that generated the reports. Nor is there any evidence as to what any other CRA would do

---

[4] The Advisory Committee Notes to Fed. R. Evid. 602 make clear that "[t]his rule does not govern the situation of a witness who testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement. Rules 801 and 805 would be applicable. *This rule would, however, prevent him from testifying to the subject matter of the hearsay statement, as he has no personal knowledge of it.*" (emphasis added.)

on receiving a dispute like Losch's. Without that information, any comparison point Losch hoped to make on a credit report is not only irrelevant, but essentially based on a confusing and an unfairly prejudicial assumption. *See* Doc. 263 at 17:20–18:2. The trial court noted that "that inquiry is not relevant to the issues in this case. Under 403, even it if is relevant, I find that there is the potential for confusion to the jury." *Id.* at 18:13–16. *Benjamin v. Experian Info. Sols., Inc*., No. 1:20-CV-2466-RWS, 2022 WL 1697876 (N. D. Ga. Mar. 25, 2022), a case also litigated by Price Law Group and which Losch inexplicably cites to support his argument, agrees with the trial court on that point. There, the court concluded that the plaintiff could not reference other CRAs procedures — because "it does not appear that Plaintiff can demonstrate that the other consumer reporting agencies' procedures constituted an industry norm, custom, or standard practice, or that Experian was even aware of the other consumer reporting agencies' procedures at the time of the events preceding Plaintiff's lawsuit." *Id.* at *2; *see also Wolf v. Celebrity Cruises, Inc*., 683 F. App'x 786, 795 (11th Cir. 2017) ("[C]onclusory statements fail to demonstrate industry standards against which a trier of fact could consider in determining whether [there was a] breac[h] [of] duty . . . [u]se of the [] standard by one [company] does not demonstrate an industry custom").

   None of the cases Losch cites support his position that the trial court either "ma[de] a clear error of judgment or applie[d] an incorrect legal standard" in

deciding that Losch could not make reference to the other CRAs reporting. *Guevara v. NCL (Bahamas) Ltd.,* 920 F.3d 710, 717 (11th Cir. 2019); Appellant's Br. at 48. Two of the cases were on a motion to and dealt with whether plaintiffs had stated a plausible claim. *Gadomski v. Equifax Info. Servs., LLC*, No. 2:17-CV-00670, 2020 WL 3841041, at *5 (E.D. Cal. July 8, 2020); *Gibson v. Experian Information Sols., Inc.*, No. 20-CV-00393 (E.D. Mo. October 13, 2020). The third case, *Benjamin v. Experian Info. Sols.*, No. 1:20-cv-02466-CC-RDC, 2021 U.S. Dist. LEXIS 179980, at *38 (N.D. Ga. Aug. 4, 2021) later ruled *against* the plaintiff on a motion *in limine* and noted that the plaintiff could not make reference to other consumer reporting agencies' procedures. *See Benjamin*, 2022 WL 1697876, at *2.

The trial court's decision should be affirmed.

**E.    The Trial Court Did Not Abuse Its Discretion By Excluding Evidence Regarding Experian's Corporate Size and Resources.**

The trial court properly excluded reference to Experian's size and resources based on the "danger of unfair prejudice." Doc. 215 at 27 (Order granting Experian's motion *in limine*). It is a "general rule" that during a trial no reference should be made regarding the wealth or poverty of a party. *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002). However, the trial court's ruling was subject to Experian opening the door by arguing or implying that it was not financially capable of engaging in a particular procedure or reinvestigation. Doc. 215 at 27. Losch argues, based on repeated misstatements of the trial record, that the trial

court's decision was an abuse of discretion because Experian opened the door to the evidence. Appellant's Br. at 52–54. Losch's misstatements of the trial record speak for themselves. Experian never opened the door and there was no error of judgment by the trial court in excluding this evidence.

First, Losch argues that Experian opened the door to evidence of its size and resources because "Experian argued that it was not capable of doing any more in response to Losch's dispute." Appellant's Br. at 52. Of course, Experian did not argue that it was unable to determine the status of Losch's account because it was *financially incapable* of doing so or lacked enough employees to do so. Experian argued that it would have been unable to determine the status of Losch's Nationstar account because the bankruptcy record was so complicated. *See* Doc. 262 at 187:11–188:12; Doc. 266 at 66:19–67:16. This is a different argument entirely. And, it is an argument driven by Losch's own assertions that Experian could have looked at the bankruptcy docket alone to determine the status of Losch's Nationstar account. *See* Appellant's Br. at 54 ("Experian specifically argued it lacked resources or capability to accurately report the information Losch disputed even though the dispute *could be substant[iated] by the public bankruptcy docket*." (emphasis added)).

Second, Losch alleges that Experian specifically referenced cost and expense for "why it acted reasonably in handling Losch's dispute." Appellant's Br. at 53 (citing Doc. 266 at 53:19–24). But even a cursory inspection of the trial transcript

shows that Losch twists the record. The point Experian's counsel made at closing argument was that it was expensive to put on a trial, but that Experian was willing to incur the cost of trial because it was not willing to pay for mistakes it did not make:

> You don't have to feel bad about sending him home with nothing because he's not going home with nothing. He settled with Nationstar, the party who made this mistake. He's been paid for this. If Experian had made a mistake here, you almost certainly would not see us up here either. You can see, I hope, we take this very seriously. This is a very expensive process, but some things, some principles matter. Our procedures are designed to maximize accuracy, and we take that seriously.
>
> Doc. 266 at 53:16–24.[5]

Third, Losch takes issue with Experian arguing that it would be unreasonable for it to access bankruptcy records in its reinvestigation when Nationstar is the party best positioned to make account status determinations. *See id.* at 66:19–67:6. Again, Experian did not state that it could not afford Pacer access or lacked the resources to obtain court documents. Rather, Experian argued that it would be unreasonable to place that burden on Experian, as opposed to Nationstar: "What would be

---

[5] Further, Plaintiff's counsel failed to raise an objection to this statement during closing argument. As the Eleventh Circuit has made clear, a failure to object during a closing argument amounts to waiver. *See Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1516–17 (11th Cir. 1993) ("Nevertheless, at no time during or after the closing arguments did [defendant-appellant] object on this ground, nor did it ask for a limiting instruction, so the objection to the closing argument is waived.").

unreasonable is for Experian to do that," *id*. at 67:4, because Experian is not a party to the transaction, and it does not want its employees making legal determinations, which is the basis for Experian's argument against its own liability (which Experian is free to make). Simply, Experian did not open the door, and the trial court's decision here should be affirmed.

## II.  THE TRIAL COURT DID NOT ERR OR ABUSE ITS DISCRETION IN ITS JURY INSTRUCTIONS

### A.  The Trial Court's Jury Instruction On Burden Of Proof Was Correct.

Losch argues that the trial court erroneously instructed that Losch's bore the burden of proof because, on Losch's read, 15 U.S.C. § 1681e(b) is a burden shifting statute per *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1157, 1160 (11th Cir. 1991). Appellant's Br. at 54–58. This argument is wrong for at least two reasons.

*First*, *Cahlin* was considering whether a grant of summary judgment was correct. 936 F.2d at 1154. The language of burden shifting makes sense because at summary judgment "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis original and citations omitted). *Cahlin* simply states the uncontroversial point that an inaccurate consumer report is a *prima facie* requirement for a claim under § 1681e(b), and when a consumer cannot

meet that requirement, no further inquiry is required. 936 F.2d at 1156 ("In order to make out a *prima facie* violation of section [1681e(b)], the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information. If he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of section 607(b), and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency.").

Losch's misread of *Cahlin* is buttressed by other cases he cites, which also hold only that a party can often survive summary judgment by showing inaccuracy. Indeed, the Third Circuit addressed how it reads *Cahlin* at summary judgment and said nothing about burden of proof at trial. *See Philbin v. Trans Union Corp.,* 101 F.3d 957, 965 (3d Cir. 1996) ("The language from *Guimond* and *Cahlin* may be interpreted in two different ways. A broader reading is that, once a plaintiff demonstrates inaccuracies in a credit report, the burden shifts to the defendant to prove as an affirmative defense the presence of reasonable procedures. A somewhat narrower, and more plausible, reading is that a plaintiff may present his case to the jury on the issue of reasonable procedures merely by showing an inaccuracy in the consumer report and nothing more, but the burden does not shift to the defendant . . . we find it unnecessary to decide among them."). *See also Frank v. RentGrow, Inc.*, No. 1:21-CV-02108-AT-LTW, 2021 WL 8998917, at *1 (N.D. Ga. Dec. 9,

2021), *report and recommendation adopted*, No. 1:21-CV-2108-AT, 2021 WL 8998916 (N.D. Ga. Dec. 29, 2021) (holding that "reasonable procedures" is not an affirmative defense but can be properly pleaded as "other defense" because it was "defense to Plaintiff's sole claim under 15 U.S.C. § 1681e(b)").

Nothing in the text of the FCRA supports reading "reasonable procedures" as an affirmative defense. Rather, this Court, and others around the country have repeatedly held that the failure to follow reasonable procedures is an element of Losch's claim under § 1681e(b). *See Losch I*, 995 F.3d at 944 ("To state a claim under 1681e, the *plaintiff must show* that the agency's report contained factually inaccurate information and that the procedures it took in preparing and distributing the report weren't reasonable and that damages followed as a result."); *see also Dalton v. Cap. Associated Indus., Inc.,* 257 F.3d 409, 416 (4th Cir. 2001) ("Nothing in the statute suggests that a plaintiff is relieved of the burden of showing that the agency failed to follow reasonable procedures."); *Sepulvado v. CSC Credit Servs., Inc.,* 158 F.3d 890, 896 (5th Cir. 1998) ("The Fair Credit Reporting Act does not impose strict liability for inaccurate entries. Rather, the plaintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared."); *Wright v. Experian Info. Sols., Inc.,* 805 F.3d 1232, 1239 (10th Cir. 2015) ("To prevail on a claim under these provisions, a plaintiff must

establish that the CRA failed to follow reasonable procedures to assure the accuracy of its reports" (cleaned up)).

*Second*, the trial court was bound by the mandate of this Court in *Losch I*. The "mandate rule" is a species of law of the case and requires that "when an appellate court issues a specific mandate it is not subject to interpretation; the district court has an obligation to carry out the order." *Cox Enterprises, Inc. v. News-J. Corp.*, 794 F.3d 1259, 1271 (11th Cir. 2015). This Court stated the elements that *plaintiff* was required to prove clearly in *Losch I*. *See* 995 F.3d at 944. The trial court was bound to follow that statement, and did so.

*Finally*, both the trial court and this Court's earlier decision in *Losch I* are supported by the statutory and congressional intent. When a statute is silent on burdens, the rule is that the plaintiff bears the burden of proof. *Edison v. Dept. of the Army*, 672 F.2d 840, 842 (11th Cir. 1982) ("Therefore, we agree with the district court that the traditional rule imposing the burden of proof on the plaintiff should apply."). Section 1681(e) says nothing about burden shifting; nor does it treat reasonable procedures as an affirmative defense. By contrast, other provisions in the FCRA, such as § 1681m(c) explicitly contain burden-shifting provisions: "[N]o person shall be held liable for any violation of this section if he shows by a preponderance of the evidence that at the time of the alleged violation he maintained reasonable procedures to assure compliance with the provisions of this section." In

this section, Congress explicitly shifted the burden to the credit reporting agency. *See Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 n.5 (D.C. Cir. 1984) (holding that on a § 1681e(b) claim "a plaintiff must minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report" and also noting that "Congress demonstrated that it 'knew how' to shift the burden of proof from plaintiff to defendant by explicitly doing so in two other sections of the FCRA"); *also compare* 15 U.S.C. § 1681e(b) to 16 U.S.C. § 1692k(c) (Fair Debt Collection Act's bona fide mistake provision providing an affirmative defense by stating: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."). Reading § 1681e(b)'s "reasonable procedures" provision as an affirmative defense and shifting the burden of proof would effectively rewrite the text of the FCRA and would run counter to precedent set by the Supreme Court and this circuit. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) ("[I]t would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope." (citing *Gardner v. Collins*, 27 U.S. 58, (1829)); *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("We begin 'where courts should always begin the process of legislative

interpretation . . . which is with the words of the statutory provision.'" (quoting

*Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc))

No such language exists in §1681e(b), and, accordingly, the jury was given

the proper instruction in this case.

### B. The Trial Court Did Not Abuse Its Discretion By Excluding Remedial Instructions Regarding Losch's Counsel's Role In Losch's Bankruptcy.

Losch requested a remedial instruction regarding "the competency or quality

of workmanship of his counsel" claiming that Experian's disparaged Losch's

counsel by drawing the jury's attention to the name of the law firm representing

Losch in his bankruptcy. Doc. 241 at 6–8. The trial court declined to provide this

remedial instruction because it concluded that "there has not been disparagement of

counsel under these circumstances" and that "[t]he documents are what they are."

Doc. 265 at 66:16–21. Losch argues that this caused him "substantial prejudice and

impairment in effectively presenting his case to the jury." Appellant's Br. at 63.

However, the trial court did not abuse its discretion because counsel's comments

were nothing more than passing factual assertions regarding publicly filed

documents. *Wood v. President & Trs. of Spring Hill Coll.*, 978 F.2d 1214, 1222 (11th

Cir. 1992) (stating that when evaluating a trial court's failure to give a requested

instruction, "the omission is error only if the requested instruction is correct, not

adequately covered by the charge given, and involves a point so important that

failure to give the instruction seriously impaired the party's ability to present an effective case").

Experian mentioned Losch's law firm's name twice while examining Losch regarding his bankruptcy records. Doc. 263 at 81:7–8; 130:22–131:4. However, it is not disparagement to cite or examine public record documents, and it is unclear how that would prevent Losch from effectively presenting his case. The documents "say what they say." Doc. 265 at 60:20–25; *see also Commodores Ent. Corp. v. McClary*, 822 F. App'x 904, 914 (11th Cir. 2020) (true remarks are not disparaging). Losch argued against the use of the bankruptcy documents because he argued their admission was an attempt to prejudice the jury against Losch's counsel and nonparty Nationstar. Doc. 262 at 18:9–13. However, that information is not disparaging; it is just true. Notably, at the time of examination the next day, Losch's counsel did not object to the specific mention of its name, only raising it as a separate issue of actual disparagement on the third day of trial. Doc. 264 at 46:19–24.

But, Losch's law firm's involvement in his bankruptcy is just a fact of the case, and an argument against Experian's own liability. Not because it was somehow worse for Price Law Group to represent Losch twice, but simply because it illustrated the complicated issues in Losch's bankruptcy and the role Losch' bankruptcy attorneys played. For example, Price Law Group was mentioned in the deposition of Alan Blunt, Nationstar's representative because an associate at Price Law Group was

calling the furnisher attempting to rescind Losch's affirmation agreement. Doc. 264 at 195:20–21, 198:13–16. Again, Losch's counsel did not object to the reading of this portion of Nationstar's deposition.

Finally, in an attempt to appease Losch's arguments regarding disparagement, Experian agreed not to specifically state Losch's law firm's name at closing argument. Doc. 265 at 66:22–24; Doc. 266 at 49:4–12. Notably, Losch's counsel then took that opportunity to highlight their law firm's involvement with Losch's bankruptcy, and to argue that Experian was trying to "gaslight" the jury. *See* Trial Doc. 264 at 154:22–155:12; Doc. 266 at 9:5–17. Then, at sidebar — required by Losch's counsel interrupting Experian's closing argument — the trial judge heard both sides and realized that Experian had consistently argued and adduced evidence that other parties, including Price Law Group, made mistakes that contributed to Losch' alleged damages. Experian honored its commitment and did not mention Price Law Group by name. *See* Doc. 266 at 49:3–12 ("It was clear yesterday that I thought I had a commitment from defense counsel not to reference the Price Law Group specifically, but I'm realizing now that there was a nuance to the discussion that I was not focused on that is now highlighted by this portion of the closing argument and this sidebar, and I am concluding that references to the bankruptcy counsel and any mistake in the bankruptcy proceeding can be referenced in the closing arguments. So I'm overruling that objection."). Experian never said a word

about Price Law Group that was untrue, defamatory or disparaging and no remedial instruction was called for.

Even supposing a remedial instruction could have been made, reversal for alleged disparagement of counsel is unwarranted. *See, e.g.*, *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) (denying reversal in a criminal case where, even after finding that counsel's comments, which cast an aspersion on opposing counsel were improper, the Court needed to look at the comment in the context of the trial, and affirming conviction while noting, among other things, that the defense counsel immediately objected to the improper comment and that the trial court sustained the objection); *cf*, *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013) (finding that statements about counsel deprived plaintiff of a fair trial where the evidence supporting the verdict was not overwhelming, and the attack on counsel may have influenced the outcome of the trial where the counsel spent most of its opening statement "planting the seed in the jury's mind . . . [that] counsel had a suspect motive in bringing [the] case").

Here, Experian's passing recognition of Losch's counsel's involvement as his earlier bankruptcy attorneys is a simple fact. It is not disparaging, and even if it were, Experian's few references to that fact do not rise to the mark of requiring reversal, especially where Experian's argument was that Losch's bankruptcy was so complicated, even bankruptcy attorneys were confused, an argument Experian

would have made regardless of what firm represented Losch in his bankruptcy. Doc. 262 at 20:14–21:2. Additionally, at the time of examination, Losch's counsel did not object and then took their own efforts to highlight their involvement. Thus, not only was no remedial instruction needed or required, but reversal based on disparagement is not warranted, either.

### C. The Courts Instruction Regarding Losch's Duty To Mitigate Was Correct Or Harmless.

Finally, Losch argues that the trial court's instruction on Losch's Duty to Mitigate was in error. Losch is wrong again.

Initially, the jury did not reach the question of Losch's duty to mitigate at all, finding that Losch failed to prove his case on other prior elements. *See* Doc. 248. Reversal for an erroneous jury instruction reserved for "in *exceptional cases* where the error is 'so fundamental as to result in a miscarriage of justice." *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1329 (11th Cir. 1999) (quoting *Montgomery v. Noga*, 168 F.3d 1282, 1294 (11th Cir. 1999)). Even had the trial court made a mistake in its instruction on Losch's duty to mitigate, it had no bearing on the jury's verdict and was harmless.

Moreover, the trial court's instruction was correct. Experian pleaded Losch's failure to mitigate as an affirmative defense. *See* Doc. 266 at 72:8-25. The trial court offered a precise definition of the duty and correctly stated that Experian had the burden of proof. *Id*. at 99:4-15, 107:22-108:8 Indeed, the trial court's instruction

closely mirrors the Eleventh Circuit's Pattern Instructions. *See* 11th Cir. Pattern Jury Instructions, 7, March 2022 ("Mitigation of Damages: You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to 'mitigate' those damages.").

Losch does not take issue with the trial court's statement of the law, which alone is enough to deny his appeal on this front. *See Montgomery*, 168 F.3d at 1294 ("[W]e require appellants to establish "that the challenged instruction was an incorrect statement of the law and that it was probably responsible for an incorrect verdict, leading to substantial injustice." (quoting *Pate v. Seaboard R. R., Inc.,* 819 F.2d 1074, 1082–83 (11th Cir. 1987))). And the issues Losch does raise do not change the outcome. Losch says that the instruction was wrong because a) Losch had in fact mitigated his damages, b) Experian failed to prove Losch had no mitigated his damages, and c) Experian's intention was to conflate mitigation and liability. Appellant's Br. at 57.

As to the first two, these are plainly fact questions that were for the jury to consider if needed, and do not properly challenge the trial court's instruction at all. As to the last, and purely speculative guess about Experian's intent, it is not true, but even if it were, that would not make the instruction erroneous. Losch sued Experian for its alleged negligence, and had a duty to mitigate any damages that resulted. *See, e g.*, *Frosty Land Foods Int'l, Inc. v. Refrigerated Transp. Co.*, 613 F.2d 1344, 1349

(5th Cir. 1980) (affirming instruction on duty to mitigate in negligence case); Restatement (Second) of Torts § 918 (1979) ("[O]ne injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort."); *see also Rubinstein v. Yehuda*, 38 F. 4th 982, 1000 (11th Cir. 2022) (discussing mitigation and contributory negligence under Florida law).[6] The trial court gave the appropriate instruction and nothing Losch argues changes that conclusion.

## CONCLUSION

For the foregoing reasons, Experian respectfully requests that this Court affirm the jury's verdict and dismiss this appeal.

---

[6] While not clear from his brief, Experian assumes that Losch intended to re-raise his prior arguments that the FCRA eliminated common law defenses to negligence like the One-Satisfaction Rule. *See* Doc. 218 at 6-17. But this argument has always misunderstood how Courts interpret statutes. In construing a federal statute like the FCRA, the Court must start with the premise that "Congress intended to retain the substance of the common law." *Samantar v. Yousuf*, 560 U. S. 305, 320 n.13 (2010); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U. S. 104, 108 (1991). A plaintiff's duty to mitigate damages caused by another's negligence is a long time common law rule, and there is no evidence in the FCRA that Congress intended to abrogate that duty.

Dated:    January 17, 2023
          Chicago, Illinois

                    Respectfully submitted,


                    *s/ Adam W. Wiers*
                    _____
                    Adam W. Wiers
                    (Il. Bar No. 6288709)
                    JONES DAY
                    Christopher A. Hall
                    (Il. Bar No. 6316715)
                    JONES DAY
                    110 N. Wacker Drive, Suite 4800
                    Chicago, IL 60601-1692
                    Telephone:(312) 269-3939
                    Facsimile: (212) 755-7306

                    Callie M. Barr
                    (MI. Bar No. P83797)
                    JONES DAY
                    150 West Jefferson, Suite 2100
                    Detroit, MI 48226
                    Telephone:(313) 230-7952
                    Facisimile:(313) 230-7997

                    *Attorneys for Defendant–Appellee*
                    *Experian Information Solutions, Inc.*

## CERTIFICATE OF COMPLIANCE WITH 11TH CIR. R. 28-1(m)

This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) and this Court's December 20, 2022 order, because this brief contains 10,837 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4, as counted by Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in proportionally spaced typeface in 14-point Times New Roman font.

*/s/Christopher A. Hall*
Christopher A. Hall

*Attorney for Defendant-Appelleet*
*Experian Information Solutions, Inc.*

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fed. R. App. P. 26.1, Appellee Experian Information Solutions provides the following lists of interested persons:

| | |
|---|---|
| Barr, Callie | Attorney for Appellee |
| Chami, David | Attorney for Appellant |
| Central Source LLC | Corporate Affiliate of Appellee |
| Experian, Plc. | Parent of Appellee |
| Experian Info. Sols., Inc. | Appellee |
| Hall, Christopher | Attorney for Appellee |
| Losch, Henry | Appellant |
| McCoy, Hon. Mac. R. | District Court Judge below |
| New Management Services LLC | Corporate Affiliate of Appellee |
| Online Data Exchange LLC | Corporate Affiliate of Appellee |
| Opt-Out Services LLC | Corporate Affiliate of Appellee |
| Rotkis, Susan | Attorney for Appellant |
| Ruiz, Maria H. | Attorney for Appellee |
| Swift, Aaron | Attorney for Appellant |
| VantageScore Solutions LLC | Corporate Affiliate of Appellee |
| Wiers, Adam | Attorney for Appellee |
| Yancy, III, Michael Everett | Attorney for Appellant |

/s/ *Christopher A. Hall*
Christopher A. Hall

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, I caused the foregoing Defendant-Appellee's Opening Brief to be filed with the Clerk of Court for the U. S. Court of Appeals for the Eleventh Circuit and served upon counsel of record for all parties to this appeal through the Court's CM/ECF system. I further certify that I caused seven paper copies to be sent to the Clerk of Court pursuant to 11th Circuit Rules 25-3(a) and 31-3.

/s/ *Christopher A. Hall*
Christopher A. Hall